

**IT IS ORDERED as set forth below:**

**Date: March 31, 2026**

_Paul Baisier_
_____
**Paul Baisier**
**U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**NEWNAN DIVISION**

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| **BRETT RAY PAVEL,** | : | CASE NO. **25-10740-PMB** |
| | : | |
| Debtor. | : | CHAPTER 7 |
| | : | |
| **CLM TRUST LLC,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | ADVERSARY PROCEEDING |
| v. | : | |
| | : | NO. **25-1014** |
| **BRETT RAY PAVEL,** | : | |
| | : | |
| Defendant. | : | |

**ORDER DENYING PLAINTIFF'S MOTION FOR RELIEF**
**FROM JUDGMENT AND TO REINSTATE ADVERSARY PROCEEDING**

This matter is before the Court on *CLM Trust LLC's Motion for Relief from Judgment and to Reinstate Adversary Proceeding* filed by the Plaintiff CLM Trust LLC (the "Plaintiff" or "CLM") on December 10, 2025 (Docket No. 10)(the "Motion to Reinstate"). Included with the

Motion to Reinstate as exhibits are *Plaintiff CLM Trust LLC's Response in Opposition to Defendant's Motion to Dismiss for Failure to State a Claim* ("Plaintiff's Proposed Response") and the *Declaration of Brad Fallon in Support of CLM Trust LLC's Motion for Relief from Judgment and to Reinstate Adversary Proceeding* (the "Fallon Declaration").[1]   The above-named Debtor, Brett Ray Pavel (the "Debtor"), who is the Defendant herein, filed the *Debtor's Response to CLM Trust LLC's Motion for Relief from Judgment and to Reinstate Adversary Proceeding* on December 19, 2025 (Docket No. 11)(the "Debtor's Response").   In the Motion to Reinstate, the Plaintiff concedes that it missed the Response Deadline (as defined *infra*) but argues instead that its failure was due to excusable neglect and, as a result, the dismissal of this Adversary Proceeding should be vacated and the case reinstated.   The Court finds the reasons proffered for the missed Response Deadline to be wholly inadequate, and that the dismissal of this case was appropriate in any event.   As a result, the Motion to Reinstate is denied for the reasons set forth in more detail below.

## **Background**

The Plaintiff commenced this Adversary Proceeding on September 9, 2025 (the "Adversary Proceeding"), by filing a *Complaint to Determine Nondischargeability of Debt Under 11 U.S.C. § 523(a)(2)(A), § 523(a)(2)(B), § 523(a)(6) And Objecting to Discharge Under 11 U.S.C. § 727(a)(2)(A), § 727(a)(4)(A)* (Docket No. 1)(the "Complaint").[2]   Following entry of a

---

[1] Brad Fallon serves as Plaintiff's counsel in this matter.

[2] The Complaint was filed following entry of an *Order Granting Motion to Extend Time* on October 23, 2025 (Main Case Docket No. 55)(the "Extension Order") after full briefing and a contested hearing on motion by the Plaintiff. These events demonstrate that Mr. Fallon is familiar with the methods for obtaining an extension of time where necessary and should have known that the Court will often accommodate such requests, even over opposition.

*Consent Order Granting Extension for Filing Answer of Other Responsive Pleading* on September 30, 2025 (Docket No. 4)(the "Consent Order"),[3] on November 7, 2025, the Debtor filed a *Motion to Dismiss for Failure to State a Claim* (Docket No. 6) and *Brief in Support of Motion to Dismiss for Failure to State a Claim* (Docket No. 7)(collectively, the "Motion to Dismiss") and served it on the Plaintiff.   Per the local rules of this Court, the deadline to file a response to the Motion to Dismiss was November 21, 2025 (the "Response Deadline").   BLR 7007-1(c).   Because the Plaintiff did not file a response to the Motion to Dismiss prior to the Response Deadline, the Motion to Dismiss was deemed unopposed, *see* BLR 7007-1(c), and the Court entered an *Order Dismissing Adversary Proceeding* on December 3, 2025 (twelve (12) days after the Response Deadline), which granted the Motion to Dismiss, dismissed all claims against the Debtor with prejudice, and constituted a final judgment (Docket No. 8)(the "Order of Dismissal").   As mentioned above, the Motion to Reinstate and Plaintiff's Proposed Response were filed seven (7) days later,[4] or nineteen (19) days after the Response Deadline and more than a month after the Motion to Dismiss was filed.

### Standard of Review

Under Federal Rule of Bankruptcy Procedure ("F.R.B.P.") 9006(b)(1)(B), this Court may, for cause shown, permit an act that was required to be done within a specified period to be completed after the time has expired "where the failure to act was the result of excusable neglect."

---

[3] The Consent Order granted the Debtor fifteen (15) days from entry of the Extension Order to file his answer or otherwise respond to the Complaint.   This, too, shows that Mr. Fallon is aware of the various methods to obtain an extension of time where necessary, as here he consented to such a request.

[4] Although the Court might have expected counsel to act more promptly given the circumstances that generated the need for the Motion to Reinstate, it appears that the Motion to Reinstate is timely under F.R.B.P. 9023 and F.R.C.P. 59(e).   In the alternative, the Plaintiff seeks relief under F.R.B.P. 9024 and F.R.C.P. 60(b).

In addition, Federal Rule of Civil Procedure ("F.R.C.P.") 59(e) is applicable in adversary proceedings under F.R.B.P. 9023 so that a court may consider a motion to alter or amend a judgment to correct a clear error of law or fact or to prevent manifest injustice.   Further, F.R.B.P. 9024 makes F.R.C.P. 60(b) applicable herein, and permits the Court to relieve a party from a final judgment based on, among other grounds, "mistake, inadvertence, surprise, or excusable neglect" or for "any other reason that justifies relief."   F.R.C.P. 60(b)(1) & (6).

Generally, a motion made under F.R.C.P. 60 must meet the same standard as a motion offered under F.R.C.P. 59.   *See In re Bogdan,* 2023 WL 2938395, at \*3 (Bankr. N.D. Ga. Apr. 13, 2023), citing *Nisson v. Lundy*, 975 F.2d 802, 806 (11th Cir. 1992).[5]   The principal exception is that under F.R.C.P. 60(b)(6), a court can reconsider a judgment for any "reason that justifies relief."   Such relief, however, requires the moving party to show "exceptional circumstances." *Bogdan, supra*, 2023 WL 2938395, at \*3 (citing *In re Mathis*, 465 B.R. 325, 331 (Bankr. N.D. Ga. 2012).   Exceptional circumstances under F.R.C.P. 60(b)(6) must be based on an argument that could *not* have been made before the judgment was entered and attorney negligence generally does *not* suffice.   *Bogdan, supra*, 2023 WL 2938395, at \*3, citing *Solaroll Shade & Shutter Corp. v. Bio–Energy Systems, Inc.,* 803 F.32d 1130, 1133 (11th Cir. 1993).[6]

Regarding F.R.C.P. 60(b)(1), the Eleventh Circuit has stated "an attorney's negligent failure to respond to a motion does not constitute excusable neglect, even if that attorney is

---

[5] The Plaintiff is not contending that it has newly discovered evidence or that relief is based on the correction of a clear error or to prevent manifest injustice, and so F.R.C.P. 59(e) does not apply.

[6] In addition, attorney error like that present here must be asserted under F.R.C.P. 60(b)(1) instead of the "residual equitable authority" of F.R.C.P. 60(b)(6) and these subparts are "mutually exclusive."   *Solaroll Shade, supra*, 803 F.2d at 1133.   Relief cannot be granted under (b)(6) on any basis that could have been considered under (b)(1).   *Id.*

4

preoccupied with other litigation." *Solaroll Shade, supra*, 803 F.2d at 1132 (citations omitted). The court added, however, that "courts are chary of dismissing actions on account of attorney inadvertence in non-abusive situations." *Ibid*. The United States Supreme Court clarified the meaning of "excusable neglect" under F.R.B.P. 9006(b)(1) in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993).

In *Pioneer*, the Court acknowledged that although "neglect" here does not "inflexibly" exclude every "instance of an inadvertent or negligent omission," such neglect must be "excusable." 507 U.S. at 394-95. The Court set forth an analysis guided by equitable concerns and a consideration of the circumstances in connection with an omission or failure to act timely. The factors to be weighed include the following: "'the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'" *Pioneer, supra*, 507 U.S. at 395, quoted in *Cheney v. Anchor Glass Container Corp.*, 71 F.3d 848, 850 (11th Cir. 1996).[7]

Since a "determination of excusable neglect is an equitable one," an evaluation of each factor is appropriate. *Valdez v. Feltman (In re Worldwide Web Sys., Inc.)*, 328 F.3d 1291, 1297

---

[7] The Court reiterated the rule that clients are accountable for both the acts and the omissions of their chosen counsel. *Pioneer, supra*, 507 U.S. at 396-97. The Court, however, upheld the decision of the appellate court allowing extension of a bar date to file late claims. Although the Court accorded "little weight to the fact that counsel was experiencing upheaval in his law practice," the fact that counsel did not apprehend the notice of bar date was excusable given its inconspicuous placement in the notice. *Id*. No such factor applies here.

(11th Cir. 2003).[8]  Thus, it is "a flexible standard that takes 'into account all the relevant circumstances' and is not a mechanical test."  *Petite v. MedCross Imaging, LLC (MedCross Imaging, LLC)*, 2023 WL 4111563, *5, 2023 Bankr. LEXIS 1603, at *17 (Bankr. N.D. Ga. June 21, 2023).  Further, "[w]hen considering the reason for the delay, excusable neglect 'may include, when appropriate, late filings caused by inadvertence, mistake, or carelessness under certain circumstances.'"  *MedCross, supra*, 2023 WL 4111563, at *5, quoting *Locke v. SunTrust Bank*, 484 F.3d 1343, 1346 (11th Cir. 2007).  In *Cheney, supra,* 71 F.3d 848, the Eleventh Circuit applied the *Pioneer* analysis to F.R.C.P. 60(b) and reversed the denial of relief where a breakdown in communication between a party's own counsel led to the failure to meet a deadline to seek a new trial by six (6) days.  In that case, the court was persuaded by the lack of prejudice to the nonmoving party in granting relief, the minimal extent of the delay, the absence of bad faith, and the failure amounting to innocent oversight or carelessness by counsel as opposed to a deliberate

---

[8] In *Valdez*, *supra*, the Eleventh Circuit stated that the absence of prejudice alone is insufficient, and the court must also consider meritorious defense as well as a good reason for failing to respond.  *Id.* at 1297.  In that case, the court affirmed the denial of a motion to set aside a default judgment under F.R.C.P. 60(b)(1) on grounds of excusable neglect because the moving party failed to satisfy the latter two requirements.  *Id*. at 1297-98.  As the court stated:

> Valdez is correct that in *Cheney* we acknowledged that the Supreme Court in *Pioneer…*accorded primary importance to the absence of prejudice and to the interest of efficient judicial administration in determining whether the district court had abused its discretion. *Cheney,* 71 F.3d at 849–850. While the absence of prejudice to the nonmoving party and to the interest of efficient judicial administration are of "primary importance," the *Pioneer* and *Cheney* decisions do not alter the fact that a determination of excusable neglect is an equitable one that necessarily involves consideration of all three elements—a meritorious defense, prejudice, and a good reason for not responding to the complaint—and not, as Valdez argues, exclusively prejudice.

*Valdez, supra*, 328 F.3d at 1297.

Consequently, it is clear that all three (3) factors must be considered.

disregard of the rules.   71 F.3d at 850.   *See also Satco Prods., Inc. v. Seoul Semi-conductor, Inc.*, 551 F. Supp. 3d 1329, 1333 (N.D. Ga. 2021)(finding negligent omission).[9]

### Discussion

The Plaintiff contends that dismissal of its Complaint and permanently foreclosing it from any meaningful remedy on its claim on grounds of its one and only missed deadline is unduly harsh.   The Debtor counters that the Plaintiff's failure to file a response to the Motion to Dismiss due to the heavy workload of its counsel does not constitute "excusable neglect."   Applying the *Pioneer* standard as directed in this Circuit, the Plaintiff must show (1) a meritorious defense that might affect the outcome; (2) a lack of prejudice to the nonmoving party; and (3) a good reason for the default.   *Mathis, supra*, 465 B.R. at 331, quoting *Valdez,* 328 F.3d at 1295.   Here the Plaintiff fails the first and the third tests.

A.   Merits of the Plaintiff's Claims

In the Complaint, the Plaintiff asserts causes of action for nondischargeability of debt under 11 U.S.C. § 523(a)(2)(A), § 523(a)(2)(B), and § 523(a)(6), as well as for objection to discharge under 11 U.S.C. § 727(a)(2)(A) and § 727(a)(4)(A).   The respective merits of these claims are assessed using the standard for a motion to dismiss under F.R.C.P. 12(b)(6), as applied herein through F.R.B.P. 7012(b).

---

[9] The Debtor argues that *Satco, supra,* is distinguishable from the present case.   In *Satco*, the court stated that "[u]pon realizing his oversight, [defendant's] counsel conferred with [plaintiff's] counsel concerning the instant motion, and he filed the answer and the motion that same day."   551 F.Supp.3d at 1332.   Here, Plaintiff's counsel did not reach out to the Debtor's counsel when he realized he missed the deadline, nor did CLM immediately file this Motion to Reinstate.   Instead, CLM waited seven (7) days after entry of the Dismissal Order to file the Motion to Reinstate. Debtor's Response, pp. 7-8. Consequently, the Motion to Reinstate was filed almost three (3) weeks after the Response Deadline had passed, and more than a month after the Motion to Dismiss was filed.

Under F.R.C.P. 12(b)(6), dismissal of a complaint is appropriate when the complaint fails "to state a claim upon which relief can be granted."   F.R.C.P. 12(b)(6) is viewed through F.R.C.P. 8(a), incorporated herein under F.R.B.P. 7008(a).   Pursuant to F.R.C.P. 8(a), a pleading must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief."   Under this standard, "to survive a motion to dismiss, a complaint must now contain factual allegations that are 'enough to raise a right to relief above the speculative level.'"[10]   In addition, pursuant to F.R.C.P. 9(b), incorporated herein under F.R.B.P. 7009, fraud must be plead with particularity and, although malice and intent may be alleged generally, facts regarding time, place, and content of any alleged misrepresentations must be provided.[11]

In evaluating a motion to dismiss, the inquiry is limited "to the legal feasibility of the complaint and whether it contains facts and not just labels or conclusory statements." *In re Lafayette*, 561 B.R. 917, 922 (Bankr. N.D. Ga. 2016).   The Court "must take the factual allegations of the complaint as true and make all reasonable inferences from those facts to determine whether the complaint states a claim that is plausible on its face."   *In re American Berber, Inc.*, 625 B.R. 125, 128 (Bankr. N.D. Ga. 2020)(citations omitted); *see also In re Adetayo*, 2020 WL 2175659, *1 (Bankr. N.D. Ga. May 5, 2020)(citations omitted).   "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."   *Ashcroft*, *supra*, 556 U.S. at 679.

---

[10] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), quoted in *Berry v. Budget Rent A Car Systems, Inc.*, 497 F.Supp.2d 1361, 1364 (S.D. Fla. 2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).

[11] *United States v. Baxter Intern., Inc.*, 345 F.3d 866, 833 (11th Cir. 2003); *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1370-71 (11th Cir. 1997); *In re Eden*, 584 B.R. 795, 803-04 (Bankr. N.D. Ga. 2018).

A claim has "facial plausibility" when the facts alleged permit a reasonable inference that the defendant is liable on the grounds asserted. *In re Seligman*, 478 B.R. 497, 501 (Bankr. N.D. Ga. 2012)(citations omitted).   In cases "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"   *Ashcroft*, 556 U.S. at 679 (quoting F.R.C.P. 8(a)(2)).   In addition, dismissal is proper "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action."   *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).   Using these standards, the Court will evaluate each of the Plaintiff's claims to see if there are potentially meritorious claims that satisfy the standard for excusable neglect.

Count I: Nondischargeability for False Pretense/False Representation/Actual Fraud Under 11 U.S.C. § 523(a)(2)(A).

On proper proof, "any debt ... (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by— (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition" may be excepted from discharge under 11 U.S.C. § 523(a)(2)(A).[12]   A debt is excepted from discharge under this provision when it occurs "in relation to the commission of 'positive or actual fraud involving moral turpitude or intentional wrongdoing.'"   *Invest Atlanta Reg'l Center, LLC v. Smith (In re Smith)*, 578 B.R. 866, 875 (Bankr. N.D. Ga. 2017)(citations omitted).   Further, "'legal or constructive fraud, which involves an act contrary to a legal or equitable duty that has a tendency

---

[12] Based on the presumption under 11 U.S.C. § 727(b) that all debts are dischargeable, a party contending to the contrary under an exception to dischargeability bears the burden of proof and must establish its claim by a preponderance of the evidence.   *Grogan v. Garner*, 498 U.S. 279, 287-88, 291 (1991).

to deceive, yet not originating in an actual deceitful design, is insufficient.'" *Id.* at 876 (citations omitted).   To succeed on a claim under Section 523(a)(2)(A), a creditor must show that the debtor "'obtained money, property or credit from the Plaintiff: (1) by false representation, pretense, or fraud; (2) knowingly made or committed; (3) with the intent to deceive or to induce acting on same; (4) upon which the Plaintiff actually and justifiably relied; and (5) from which the Plaintiff suffered damages, injury or loss as a proximate result.'" *Id.* at 876 (citations omitted).

As held by the United States Supreme Court, "'actual fraud' in § 523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected [*sic*] without a false representation." *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355, 359 (2016).   *See also In re Vandeford*, 2015 WL 1736486, at *2 (Bankr. N.D. Ga. Apr. 13, 2015)(citations omitted)(under this exception, 'actual fraud' reaches any attempt by someone to trick, cheat, or gain an unfair advantage over another to their detriment).   In cases such as these, "the fraudulent conduct is not in dishonestly inducing a creditor to extend a debt.   It is in the acts of concealment and hindrance." *Husky*, *supra*, 578 U.S. at 362.

Two (2) rulings by the Eleventh Circuit discussing *Husky, supra*, further explain the application of this discharge exception.   First, in the case of *In Re Gaddy*, 977 F.3d 1051, 1057 (11th Cir. 2020), in contrast to the facts in *Husky*, the Eleventh Circuit drew a distinction between the fact that the transferor-debtor in *Gaddy already* owed the creditor via a loan guaranty.   The allegation that the debtor fraudulently transferred assets to frustrate collection of the guaranty did not convert the underlying obligation into a debt obtained by fraud.   Further, in reviewing both *Husky* and *Gaddy*, in *PRN Real Estate & Inv., Ltd. v. Cole*, 85 F.4th 1324, 1346 (11th Cir. 2023), the Eleventh Circuit reasoned that "[i]n short, the [Supreme] Court agreed that § 523(a)(2)(A)

10

cannot apply to the party who fraudulently transferred money because his debt preexisted the fraud."

The Complaint filed in this matter refers to a "Note" and a "Check." The Note was made by the Debtor and another individual. The Check was made by Commercial Flooring Solutions, LLC. Per the Complaint, the Note and the Check were both signed on September 12, 2023. The Note was nevertheless dated September 22, 2023, and was due in full on the same day. No interest was due under the Note per its terms until after September 22, 2023. Neither the Note nor the Complaint suggests that any funds were advanced in connection with the issuance of the Note. In fact, through reference to other documents also attached to the Complaint, it appears that the debt evidenced by the Note pre-existed the execution of the Note by at least four (4) months.[13] Neither the Complaint nor the Note recite that the apparently pre-existing debt was due by its terms as of the date of the execution of the Note or the delivery of the Check.

Similarly, the Check was post-dated September 23, 2023, or the day after the Note was due. No explanation is provided in the Complaint as to why both a Note and a Check were issued for the same obligation at the same time – but they were presumably issued to facilitate collection of the debt now evidenced by the Note. Per the Complaint, the Debtor represented[14] that the Note would be paid at maturity, and funds would be available so that the Check would clear on its date, although no detail is provided as to how the Debtor represented that would occur. Those two (2)

---

[13] The "Independent Contractor Agreement" attached to and referenced in the Note suggests that the funds were advanced no later than May 2023. See Note, para. II; Independent Contractor Agreement, para. 2.

[14] This "representation" is more akin to a promise, as the Debtor cannot of course predict the future. The Complaint recites no other facts that might have been misrepresented upon which such a promise, or prediction, might have been based (*e.g.* the business has a big receivable that the customer has promised to pay by then).

11

"representations" are asserted to have been false.   In the Complaint, the Debtor only complains about the Check.   No assertions are made that the acceptance of the Note was also induced by fraud.

Here, the Complaint does not adequately allege that the Debtor obtained, or the Plaintiff provided, any money, property, services, or an extension of credit when the Check was presented to the Plaintiff.[15]   Instead, based on the facts alleged in the Complaint, Debtor represented "that the Note would be paid at maturity" when "Debtor issued—or caused to be issued—a check for $95,400 and requested CLM hold the check until 9/23/2023 because funds would be available on that date."   Complaint, ¶ 25.[16]   As the Debtor argues, the alleged bad check was issued to pay off

---

[15]  As stated in the Complaint:

> 7. On or about September 12, 2023, Debtor Brett Pavel and Joseph Santos executed a Promissory Note payable to CLM and SIRA LLC in the principal amount of $95,400.00 (the "Note"). The Note is attached as Exhibit A.
>
> 8. The Due Date of the Note was September 22, 2023 ("Due Date").
>
> 9. The Note was for the sum of $95,400.00 with interest from the due date on the unpaid principal at the rate of 26% per annum.
>
> 10. On or about September 12, 2023, the Debtor issued or caused to be issued a check to CLM dated September 23, 2023, in the amount of $95,400.00, purporting to satisfy the Note (the "Check"). The Check found to be written on insufficient funds. Exhibit B.

Complaint, ¶¶ 7-10.

[16] The Plaintiff previously alleged as follows:

> 13. After September 23, CLM Trust was concerned that the Check might not be good and could cause problems with their own bank account if they deposited the $95,400 Check and it was returned.
>
> 14. To ensure the Check was good, Crystal Murillo, the managing member of CLM Trust, took it to a branch of the bank on which it was drawn to see if there were funds available to cover it. Ms. Murillo was told that there were not sufficient funds to cover the Check.

Complaint, ¶¶ 13 & 14.

12

the Note, which itself appears to have documented a pre-existing debt.  The Debtor received nothing in exchange for the Note or the Check.[17]  *Auto. Fin. Corp. v. Redick (In re Redick)*, 2007 WL 7143350, *4-5, 2007 Bankr. LEXIS 2978, at *12-13 (Bankr. N.D. Ga. 2007); *see also In re Preston,* 47 B.R. 354 (E.D. Va. 1983).

The Plaintiff asserts that it "justifiably relied" on the Debtor's assurances that he had sufficient funds and/or collateral to satisfy the Note "in extending and later forbearing collection" that culminated in its acceptance of the check "with the Debtor's instruction to hold until September 23, 2023."  Complaint, ¶ 17.  The Plaintiff further alleges in Count I that the Debtor asked it to "hold the check until 9/23/2023 because funds would be available on that date…[and that it] justifiably relied on these representations by forbearing collection *to and including* September 23, 2023."  Complaint, ¶ 25 (emphasis supplied).  Similarly, it alleges that the Debtor's statements "were made to induce CLM's forbearance" causing it economic injury.  Complaint, ¶ 26.[18]

---

[17] As discussed *supra*, the Complaint is not a model of clarity on this point, but it appears that the Note was issued to evidence a debt that already existed, since there is no allegation that any funds were advanced at the time the Note was signed and Check issued.   There are also no allegations that explain why the Note and Check were signed when they were – although one might surmise it was to provide further documentary evidence of this debt and to have it accrue interest on and after September 23, 2023.

[18] The Plaintiff asserts "that Debtor did not merely send a check on an old debt and hope for the best. It alleges that Debtor made specific false representations about future ability to pay in order to induce CLM not to sue, not to demand collateral, and not to pursue other remedies during a crucial period. CLM alleges that it did in fact forbear in reliance on those statements."  Plaintiff's Proposed Response, p. 5.  Unfortunately, allegations in the Plaintiff's Proposed Response are not allegations in the Complaint, which as noted *supra*, says nothing about a debt being due, about any "specific false representations," or about why a ten (10) day period might be "crucial."   The only due date referenced in the Complaint is the one in the Note, which occurred after the supposed representations were allegedly made. There is no suggestion in the Complaint that the September 22/23 date was further extended based on the alleged representations, such that there is no relevant "forbearance" alleged in the Complaint.

These allegations are not sufficient to establish plausible grounds that an exception to discharge exists under Section 523(a)(2)(A).  First, none of the alleged "representations" are actually representations – they are promises about future actions that cannot support fraud.  Further, even if the Debtor tendered the Check never intending that it would be covered by good funds as alleged, the obligation to which it related was already owed and the Check was just another promise to pay that same debt.  No loss resulted from issuance of the Check, since the money had already been lent by the Plaintiff.  Moreover, the Plaintiff could not have relied on the Check in forbearing from collection on the Note because, by its terms, the Note was not due until September 22, 2023, and no allegation is made in the Complaint that the debt that became evidenced by the Note was otherwise due and collectable when the Note and Check were issued.[19]

Count II: Nondischargeability for Use of Materially False Statement Under
11 U.S.C. § 523(a)(2)(B)

Next, to assert a proper claim under Section 523(a)(2)(B), the Plaintiff must plausibly allege that it (a) relied on a debtor's statement in writing respecting the debtor's financial condition, (b) that statement was materially false, and (c) the debtor made or published with the intent to deceive.  As the Debtor argues, a check is not considered a "statement."  Instead, a check is considered evidence of debt owed.  "[A] check, being a 'negotiable instrument,' a form of contract, creating rights, and not a statement, supplying information, cannot be a 'false financial statement' within the meaning of 11 U.S.C. § 523(a)(2)(B)." *In re Paulk*, 25 B.R. 913, 918

---

[19] In addition, the Plaintiff nowhere explains its damages – how a ten (10) day delay in commencing collection efforts resulted in harm to the Plaintiff.  The Plaintiff does not, for example, allege that the Debtor had assets that in the intervening time he disposed of or otherwise put out of the Plaintiff's reach.  In the absence of any allegation regarding the nature of such harm, it is not necessarily the case, as the Plaintiff seems to assume, that if the short delay was induced by false statements by the Debtor about his future ability to pay that the entire preexisting debt to the Plaintiff would be nondischargeable.

14

(Bankr. M.D. Ga. 1982); *see also In re Lahiri*, 225 B.R. 582, 590 (Bankr. E.D. Pa. 1998); *In re Reyes*, 2020 WL 4006376, at *8 (Bankr. W.D. Okla. July 15, 2020).

Further, the Plaintiff alleges the Debtor provided written statements regarding his financial condition that were materially false.  The statements included the Debtor's liquidity and collateral.  Complaint, ¶ 29.  These allegations, however, are not pled with any specificity regarding the e-mails or texts mentioned, other documents or writings, or surrounding factual circumstances regarding such communications.  Although the Plaintiff does not need to allege every detail (*see* F.R.C.P. 8(a)(2)), and some flexibility may be allowed in fraud pleading prior to discovery (*see* F.R.C.P. 9(b)), here the Complaint provides no specificity whatsoever.  It does not describe anything specifically, but only recites the statutory elements in the most general terms, does not provide enough information to narrow down when the allegedly false statements were given, and whether they occurred prior to the execution of the Note or were given in connection with the Check.[20]

Count III: Nondischargeability for Willful and Malicious Injury Under
11 U.S.C. § 523(a)(6)

The Plaintiff alleges that the Debtor knowingly issued an uncollectible check to cause injury in leading the Plaintiff to forbear collection in violation of Section 523(a)(6).  "A willful and malicious injury under § 523(a)(6) 'is confined to acts, such as intentional torts, done with an actual intent to cause injury as opposed to acts done intentionally that result in injury.'" *Cox v. Corona (In re Corona)*, 657 B.R. 554, 567 (Bankr. N.D. Ga. 2024)(citations omitted).  The failure

---

[20] Were this Order addressing only the Motion to Dismiss, the Plaintiff might in the discretion of the Court be provided an opportunity to amend its Complaint to add this specificity.  However, given the posture of this matter, such an opportunity would be inappropriate.

to pay debt or a knowing breach of contract, on its own, does not present a claim for a willful and malicious injury. *See Nat'l City Bank v. Wikel (In re Wikel)*, 229 B.R. 6, 11 (Bankr. N.D. Ohio 1998).

According to the allegations in the Complaint, the Debtor gave the Plaintiff the Check on September 12, 2023, which was ten (10) days before the Note's maturity date of September 22, 2023. Complaint, ¶¶ 25, 32. As discussed above, the Debtor's providing the Plaintiff with a check prior to the maturity date does not sufficiently assert facts alleging the type of willful and malicious injury contemplated under Section 523(a)(6) because such action would have occurred after the loan was made and prior to its repayment due date. Issuance of the Check "to defeat collection" is not enough since the mere failure to pay a debt as promised by issuance of a bad check, without more,[21] does not plead a sufficiently plausible claim for relief under Section 523(a)(6). In addition, issuance of the Check "to delay collection" or create time "to divert assets" is not sufficient, since there are no allegations in the Complaint that the debt included in the Note was due and payable, and the Debtor was not obligated to pay the Note until it was due, such that issuance of the Check did not buy the Debtor more time than he already had under the Note itself.

Count IV: Denial of Discharge for Transfer/Concealment of Property Under
11 U.S.C. § 727(a)(2)(A)

Moving on to the allegations in support of its objection to discharge, the Plaintiff's asserts that the Debtor "with intent to hinder, delay, or defraud a creditor . . . has transferred, . . . or concealed . . . property of the debtor, within one year before the date of the filing of the petition." 11 U.S.C. § 727(a)(2)(A). According to the Plaintiff, the Debtor allegedly committed such acts

---

[21] A debtor's intent to cause the injury through his action is also necessary. *Corona*, *supra*, 657 B.R. at 568.

by transferring or concealing property "with intent to hinder or delay creditors by maintaining beneficial use and control of 145 Cotton Mill Ct., Fayetteville, GA 30215 [(the "Property")] while structuring title and payments through his spouse."  Complaint, ¶ 35.  In connection with the Property, the Plaintiff pleads: (a) a security deed recorded on November 23, 2020, in which the Debtor is the grantor; (b) a subordination agreement recorded on August 11, 2021, where the Debtor is named as the borrower; and (c) a security deed in the Debtor's spouse's name recorded on May 21, 2021.  *Id.*[22]  The Plaintiff also alleges that the Debtor made $33,700 in insider mortgage payments and made sworn statements inconsistent with his interest in this Property.  *Id.*

As Debtor points out, these documents were recorded and any alleged transfer occurred well outside the one-year transfer window required under Section 727(a)(2)(A).  The Debtor argues that the Complaint does not allege any facts, and the Plaintiff has not pled or referenced a recorded deed, showing that the Debtor either owned or owns the Property, or transferred the Property to his spouse.  As such, the Debtor maintains that the Plaintiff has failed to allege that a "transfer" has occurred as defined in Section 101(54).

The Plaintiff states, however, that based on its Complaint allegations, it has established grounds in support of the Debtor's continuing concealment of such interest into the one-year look-back period.  Under the doctrine of continuing concealment, a court may rely on an alleged transfer that was made beyond the look-back period set forth in Section 727(a)(2), when the transferor retained an interest in the property that remained concealed from creditors during the look-back period.  *Coady v. D.A.N. Joint Venture III, L.P. (In re Coady)*, 588 F.3d 1312, 1315-16

---

[22] Although the first two (2) documents suggest that the Debtor owned the Property.

(11th Cir. 2009).   It is not necessary that the actual transfer itself be concealed; instead, it must be shown that the transferor retained a beneficial interest in the property that was concealed from creditors.   *In re Robertson*, 576 B.R. 684, 703 (Bankr. N.D. Ga. 2017).   The beneficial interest as concealed may vary, but "typically the mere retention of benefits of ownership or continued use or possession of property previously transferred is insufficient."   *Id.* at 704 (citation omitted).[23]

The Plaintiff argues that it need not allege facts showing who held record title to the Property.   Rather, it maintains that it has alleged sufficient facts to permit the reasonable inference that the Debtor concealed an interest in the Property through the recorded security deed and other instruments identified, insider transfers, and sworn statements at his Section 341 Meeting of Creditors that inaccurately characterized or misrepresented his relationship to the Property.

On review, the Court agrees with the Debtor that the Plaintiff has not alleged sufficient facts to present a plausible claim that the Debtor held and subsequently transferred an ownership interest in the Property, or otherwise structured title to place title with his spouse, but withheld a concealed beneficial interest (beyond continued occupancy or use) into the year prior to bankruptcy with intent to hinder or delay creditors.   The bare recitation of statutory requirements, without supporting facts that would support the claim, is inadequate.   Among other things, the Debtor must be directly alleged to have had some legal interest in the Property before he can be

---

[23] Retention may provide evidence of concealment, but the concealment at issue goes beyond possession and would include, for example, the undisclosed right to occupy the premises rent-free or to retain the right to reconvey the property.   *See Rosen v. Bezner*, 996 F.2d 1527, 1532 (3d Cir. 1993).   The Plaintiff also claims that the Debtor "continued that concealment…by using marital funds and insider payments to service the mortgage while enjoying occupancy."   Plaintiff's Proposed Response, p. 10.   In this case, there is no allegation here of a right to reconveyance, and instead of rent free living the allegations are just the opposite – that the Debtor made payments (that he disclosed in his bankruptcy case) to pay the mortgage.

held liable for its concealment, and no such interest is actually alleged here.  *See Rosen, supra*, 996 F.2d at 1531-32.

Count V: Denial of Discharge for False Oath Under 11 U.S.C. § 727(a)(4)(A)

This Count of the Complaint fails to state a claim because the Plaintiff has not alleged that the Debtor knowingly and fraudulently made a false oath or account about the ownership of the Property.   Section 727(a)(4)(A) states that discharge shall not be granted if "the debtor knowingly and fraudulently, in or in connection with this case . . . made a false oath or account."[24]   Here, the Plaintiff alleges that the "Debtor knowingly and fraudulently made material false oaths in this case, including his sworn schedules and SOFA [Statement of Financial Affairs] (filed July 24, 2025 and August 6, 2025, respectively) and § 341 testimony (e.g., that the house "always" was only in his wife's name), notwithstanding public records and loan files identifying him as the Grantor/Borrower."   Complaint at ¶ 38.

As with Count IV, this Count suffers from the same failure to allege any facts suggesting that the Debtor currently owns or previously owned the Property, or that he transferred it to his spouse.   The Plaintiff insists that allegations that the Debtor was the record title owner of the Property are less important than plausible allegations that the Debtor knowingly made false or misleading statements under oath regarding ownership that relate to "the existence, value, and

---

[24] A proper claim under this provision requires that:

> There was a false oath, that it was material, and that it was made knowingly and fraudulently.   A misrepresentation is material 'if it bears a relationship to the [debtor's] business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.' *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984)(citations omitted). Detriment to creditors need not be shown.  *Id.*

*Robertson, supra*, 576 B.R. at 708-09.

disposition of assets" of the Debtor and his financial affairs.   Proposed Response, p. 11.   Without

facts alleging who was actually the record owner[25] of the Property, however, and what beneficial

interest the Debtor retained and concealed, the Plaintiff's speculative claims do not reach the

minimal standard of plausibility.

        B.   Lack of Prejudice to the Debtor in Setting Aside the Dismissal

The Plaintiff contends that setting aside the dismissal and reinstating this matter merely

returns the parties to the position they reasonably expected after the Extension Order.   By contrast,

if the Dismissal Order stands, the Plaintiff will be denied its only opportunity to challenge the

dischargeability of its claim, which is a disproportionate sanction especially in view of the

Plaintiff's active prosecution of this matter.

The Debtor responds that the Plaintiff obtained a benefit by having an extended time to

reply to the Motion to Dismiss and he will incur additional cost and legal expense in having to

defend this matter.   The Debtor also adds that "ad hoc" enforcement and inconsistent application

of deadlines fails to promote "'the just, speedy, and inexpensive determination of cases.'"

Debtor's Response, p. 7, quoting *Rosenberg v. DVI Receivables XIV, LLC*, 818 F.3d 1283, 1290

(11th Cir. 2016).

This matter was still in the pleadings stage when it was dismissed.   Although the Plaintiff's

conduct has, no doubt, hindered the efficient administration of this matter, among other things,

through a delay of discovery, such that the Debtor is to some extent prejudiced by the delay in

---

[25] Absent such allegation, there is no baseline by which to measure the Plaintiff's other claims, accepted as true for purposes of the present analysis, regarding the knowingly inconsistent statements offered by the Debtor under oath.

20

having to defend himself on the claims asserted by the Plaintiff if the Order of Dismissal is set aside, such prejudice appears insubstantial.[26]

C.  Good Reason for the Plaintiff's Failure to File a Timely Response[27]

Counsel for the Plaintiff maintains that he has a good reason for his failure to file a timely response and regarding his omission states the following:

> [it] was not a deliberate choice to concede the Motion to Dismiss...[but] occurred during an unusually extreme one-week period in counsel's practice that included an all-day trial on Tuesday, November 18 outside Atlanta and out-of-state travel for multiple depositions scheduled on successive days the rest of the week. Depositions consumed the entire day and preparation consumed most of the nights. By Friday, the day the response to the Motion to Dismiss was due, counsel had gone multiple nights with virtually no meaningful sleep and was, in practical terms, functionally incapacitated as an advocate for CLM during that brief period.

Motion to Reinstate, pp. 8-9; *see also* Fallon Declaration.[28]   Thus, in his words, the failure to file a timely response "was caused by an exceptional convergence of trial, discovery, travel, and workload in other matters that crowded out what otherwise would have been a routine, timely response."   Motion to Reinstate, p. 10.   As noted, the Plaintiff's counsel describes the operative factors leading to the omission as "the scheduling, the near-total exhaustion, and the failure of the

---

[26] The Court also finds the Debtor's concerns regarding the interest of efficient judicial administration to be relevant, though as stated *supra* and *infra*, if timely asked, the Court is most often willing to grant limited extensions.

[27] As mentioned above, the Response Deadline was November 21, 2025.

[28] Counsel further explains that "the backup systems counsel had put in place to prevent missed deadlines failed because of a software error.   Had the backup system operated correctly, counsel would have received the expected alert and, even in his exhausted state," he insists, "would have had the opportunity to file a short response, a motion to amend, or a brief request for a two-day extension over the weekend."   Thus, the failure to respond, "reflected a discrete, short-lived breakdown in counsel's ability to function, compounded by the failure of the backup docketing system, during a week that was not representative of his typical workload."   Motion to Reinstate, p. 9.   With the Debtor, the Court questions why counsel did not anticipate this schedule bottleneck and draft a response or a request for an extension during the ten (10) days prior to the beginning of his trial preparation on November 17, 2025. Debtor's Response, p. 5.

backup system that ordinarily would have captured the deadline."   Fallon Declaration.   As such, counsel urges that this is not a situation where he "misunderstood the rules or simply ignored the litigation;" rather, this situation was the result of "a short, specific period of extreme conditions and a system failure that caused a one-time omission."   Motion to Reinstate, p. 10; Fallon Declaration.

The Debtor rightly points out, however, that an attorney's failure to manage his caseload is a matter that falls within the attorney's reasonable control.   Referring to an attorney's duty of diligence, his "work load should be controlled so that each matter can be handled competently." Debtor's Response, pp. 4-5, quoting Cmt. 2 to Ga. Rules of Prof'l Conduct R. 1.3 Diligence; *see also McLaughlin v. La Grange,* 662 F.2d 1385, 1387 (11th Cir. 1981)("[Appellants' motion] asserts as 'excusable neglect' only that appellants' counsel is a solo practitioner and was engaged in the preparation of other cases.   The fact that counsel has a busy practice does not establish 'excusable neglect' under Rule 6(b)(2).")   Counsel does not dispute that he missed a clear and unambiguous deadline.   The Plaintiff also does not explain why counsel could not have contacted Debtor's counsel or better, filed a short motion to extend the time to respond to the Motion to Dismiss, as he did to get an extension to file the Complaint itself.[29]

Based on the above-cited case authority, the fact that counsel is busy with a crowded schedule, including an all-day trial requiring travel, a series of out-of-state depositions, and attendant preparation time, does not furnish a basis for establishing excusable neglect. Sometimes, failure to meet a filing deadline that is attributable to negligence may qualify as

---

[29] *See* Note 3, *supra*.

excusable neglect. *Pioneer, supra,* 507 U.S. at 394-95. However, on review of the reasons offered by counsel in this case, such an occasion is not presented here.[30]

Counsel for the Plaintiff urges that "[u]nder these circumstances, it is equitable to relieve CLM, a small lender whose owners made a pre-petition loan based on Debtor's representations, from the consequences of their counsel's missed response deadline." As such, "[a]llowing the adversary to proceed on the merits would avoid an unduly harsh result for CLM that flows from a single, explainable law-office failure rather than from any lack of diligence by CLM itself." Motion to Reinstate, p. 10. The Plaintiff also states that if further factual detail is deemed necessary, it is prepared to amend the Complaint to allege more facts in connection with its forbearance, written communications, and instances of the Debtor's conduct as it pertains to financial matters and his property interests.[31]

The Court appreciates that counsel takes full responsibility for his oversight and is not unsympathetic to the consequences borne by the Plaintiff if this matter remains dismissed. Upon consideration of the above-stated factors, however, the Plaintiff's management of this matter does not rise to the level of excusable neglect required to vacate the Order of Dismissal and allow it to continue with the prosecution of its claims against the Debtor. This conclusion is especially warranted based on the determination that the Plaintiff's Complaint would not have withstood its challenge on the merits under F.R.C.P. 12. Finally, as previously noted, although the Court would

---

[30] In explaining why he waited seven (7) days after the Order of Dismissal was entered before filing the Motion to Reinstate, counsel avers that during this time he was working on it and drafting a full response to the Motion to Dismiss. *See* Fallon Declaration, ¶¶ 26-27.

[31] Permitting amendment of deficient filings in lieu of dismissal is discretionary, and in these circumstances an exercise of that discretion in favor of the Plaintiff would not be appropriate.

ordinarily have likely granted a motion to extend time to respond to the Motion to Dismiss, counsel

has not justified such retroactive relief in the circumstances presented.

### Conclusion

Based on the foregoing discussion, it is

**ORDERED** that the Motion to Reinstate is **DENIED** and this Adversary Proceeding

remains **dismissed**.

The Clerk is directed to serve a copy of this Order upon counsel for the Plaintiff, counsel

for the Debtor, the Chapter 7 Trustee, and the United States Trustee.

**[END OF DOCUMENT]**